**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

**Eastern Division**

| | |
|---|---|
| BDO USA, P.C., | ) |
| | ) Case No. |
| *Plaintiff*, | ) |
| | ) Related to: *BDO USA, P.C. v. Ankura Consulting* |
| vs. | ) *Group, LLC, et al.* |
| | ) |
| Ankura Consulting Group, LLC, et al., | ) Case No. 3:24-cv-00179-HEH |
| | ) pending in the United States District Court for the |
| *Defendants.* | ) Eastern District of Virginia |
| | ) |
| | ) **ORAL ARGUMENT REQUESTED** |

**BDO USA, P.C.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO COMPEL MADISON DEARBORN PARTNERS, LLC'S
COMPLIANCE WITH SUBPOENA**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ................................................................................................................................ 4

    A.    Madison Dearborn Is Not a Disinterested Party Under Rule 45 ......................................... 4

    B.    Madison Dearborn Impermissibly Limited Its Search to Emails ........................................ 7

    C.    Madison Dearborn's Objections Should Be Overruled ...................................................... 7

        1.    Request Nos. 1-3 ......................................................................................................... 7

        2.    Request Nos. 4 and 6 .................................................................................................. 9

        3.    Request No. 5 ............................................................................................................ 11

        4.    Request No. 7 ............................................................................................................ 11

        5.    Request Nos. 9-12 ..................................................................................................... 12

CONCLUSION ........................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Architectural Iron Workers Local No. 63 Welfare Fund v. Legna Installers Inc.*,
  2023 WL 2974083 (N.D. Ill. Apr. 17, 2023) ...............................................................................6

*BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*,
  2017 WL 5890923 (N.D. Ill. Nov. 29, 2017) ..........................................................................8, 12

*Daedalus Blue, LLC v. MicroStrategy Inc.*,
  2021 WL 11709428 (E.D. Va. May 3, 2021) ..............................................................................7

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
  2024 WL 2846035 (N.D. Ill. June 5, 2024) .................................................................................7

*EEOC v. Aerotek, Inc.*,
  815 F.3d 328 (7th Cir. 2016) .......................................................................................................6

*Granite State Ins. Co., et al. v. Pulliam Enters., Inc., et al.*,
  2015 WL 13667005 (N.D. Ind. Oct. 13, 2015) ............................................................................9

*Hanwah Azdel, Inc. v. C&D Zodiac, Inc.*,
  2013 WL 3660562 (W.D. Va. July 11, 2013) ..............................................................................8

*In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*,
  No. 17-CV-01287, 2017 WL 3386115 (N.D. Ill. Aug. 7, 2017) ..................................................3

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*,
  235 F.R.D. 447 (N.D. Ill. 2006) ...................................................................................................3

*Koken v. Am. Patriot Ins. Agency, Inc.*,
  2006 WL 1749689 (N.D. Ill. June 20, 2006) ...............................................................................3

*Lymon v. Chamberlain*,
  2020 WL 6940985 (N.D. Ill. Nov. 24, 2020) ...........................................................................5, 6

*PsyBio Therapeutics, Inc. v. Corbin*,
  No. 20 C 3340, 2021 WL 4459527 (N.D. Ill. Sept. 29, 2021) .....................................................6

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) .......................................................................................................................3

*SFG, Inc. v. Musk*,
  No. 19-CV-02198, 2021 WL 12094156 (N.D. Ill. Mar. 3, 2021) ............................................8, 9

*Sziber v. Dominion Energy, Inc.*,
    2021 WL 6332784 (E.D. Va. Sept. 14, 2021).............................................................................5

*United Biologics, LLC v. Amerigroup Tenn., Inc.*,
    2022 WL 2286197 (E.D. Tenn. June 23, 2022)..................................................................4, 5

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)....................................................................................................................3

Fed. R. Civ. P. 45 ................................................................................................................. passim

## PRELIMINARY STATEMENT

BDO filed the underlying lawsuit because Ankura Consulting Group, LLC ("Ankura"), Ankura CEO Kevin Lavin ("Lavin"), and Phuoc Vin Phan ("Phan") stole BDO's $60 million Healthcare Transaction Advisory Services ("TAS") practice. Together, the defendants recruited at least eight members of Phan's team to leave BDO and join Ankura in violation of common and statutory law, as well as Phan's contractual and fiduciary duties to BDO. Several of Phan's colleagues who followed him to Ankura also misappropriated substantial quantities of BDO's and BDO's clients' confidential information and trade secrets and transferred it to Ankura.

Madison Dearborn is a private equity company and Ankura's primary investor. On January 21, 2025, BDO issued a subpoena to Madison Dearborn, seeking documents relevant to BDO's claims and damages in the underlying case, including those regarding Madison Dearborn's knowledge of Ankura's plans to poach BDO's Healthcare TAS practice, the valuation of that practice both before and after it was stolen from BDO, and Madison Dearborn's plans to invest in or sell Ankura, in turn influencing Ankura's and Lavin's conclusion that the cost of defending the litigation was an acceptable business alternative to lawfully acquiring the TAS practice. Ex. 2 at 3-6.

On February 10, 2025, Madison Dearborn served written responses and objections to the subpoena but would only agree to search for a small subset of the requested documents, relying instead on largely boilerplate objections—such as that the requests were not relevant, too burdensome, or too broad, and because Ankura and Lavin have pending motions to dismiss for lack of personal jurisdiction. Ex. 3 at 5-12. In meet and confer calls and correspondence with Madison Dearborn's counsel, BDO repeatedly pointed out deficiencies in Madison Dearborn's responses (Ex. 4 & 5), but Madison Dearborn still refused to search for, let alone produce, most

responsive documents in its possession, custody, or control.[1] Instead, it told BDO to obtain the relevant discovery from Ankura, even though it shares the same counsel as Ankura for the purposes of this subpoena and knows Ankura has no intention of producing any documents and would not even possess many of the requested documents in the first place.

Then, in a March 12, 2025 letter, Madison Dearborn doubled down on its refusal to respond to BDO's subpoena and confirmed that it only searched for and reviewed emails – in and of itself a woefully insufficient restriction of the "communications and documents" called for in the subpoena requests – using limited search terms, asserting that any further search would be "unduly burdensome." Ex. 6 at 3. It is thus unsurprising that Madison Dearborn's production was comprised of just four email chains, some of which were redacted.[2] This type of gamesmanship is routinely admonished by courts and should not be permitted here.

The March 12th letter further asserts that Madison Dearborn is a "disinterested third party" and therefore that BDO must "first seek discovery from Ankura" (it already has). Ex. 6 at 2. But Madison Dearborn is anything but disinterested. It participates in crafting Ankura's business plans and strategies, has a vested interest in Ankura's financial performance, and has a financial interest

---

[1] On March 7, 2025, Madison Dearborn served its promised production. It only included various iterations of four email chains. Two of those chains—only one of which includes ▉▉▉▉ — indicates that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Bates Nos. MDP_000012-MDP_000014, MDP_000020-MDP_000021. Another is an email chain between ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Bates Nos. MDP_000048-MDP_000049. The email appears to be ▉▉▉▉▉▉▉▉▉▉▉▉▉ and contains improper redactions ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *Id.* The last is an email, dated ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Bates Nos. MDP_000031-MDP_000033. All four are marked confidential under the Protective Order entered by the Eastern District of Virginia. Nonetheless, BDO is entitled to explore this highly relevant information now.

[2] Madison Dearborn's self-serving explanation for these redactions is that the redacted portions addressed "irrelevant and unrelated matters." Ex. 6 at 4.

2

in the outcome of this litigation. And the pending motions to dismiss for lack of personal jurisdiction are red herrings. Indeed, regardless of the outcome of the pending motions filed by Ankura and Lavin, the case against Phan will go forward. A trial date of January 12, 2026, has been set by the Court in the Eastern District of Virginia—the "rocket docket." The documents BDO seeks are relevant to its case against Phan, too, given the defendants' concerted scheme to steal BDO's business.

In short, Madison Dearborn and Ankura are acting in concert to obstruct discovery. Madison Dearborn should not be permitted to hide behind Ankura, a company it owns. The discovery delays must come to an end.

## LEGAL STANDARD

"[T]he scope of discovery [is] broad in order to aid in the search for truth." *Koken v. Am. Patriot Ins. Agency, Inc.*, 2006 WL 1749689, at *4 (N.D. Ill. June 20, 2006) (quoting *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006)). Indeed, "[t]he scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)," which includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *In re Kleimar N.V. v. Benxi Iron & Steel Am., Ltd.*, No. 17-CV-01287, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) (internal quotations omitted); *see* Fed. R. Civ. P. 26(b)(1). "Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish*, 235 F.R.D. at 450. "Thus, the Rules often allow extensive intrusion into the affairs of both litigants **and third parties**." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 30 (1984) (emphasis added). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450.

The information requested by BDO is discoverable because it is relevant and proportional to the needs of this case. Madison Dearborn cannot meet its burden to show otherwise.[3]

## ARGUMENT

### A. Madison Dearborn Is Not a Disinterested Party Under Rule 45

Madison Dearborn improperly limits its responses to Requests 1-8 and refuses to respond to Requests 9-12 entirely on the purported grounds that it is a disinterested non-party and, thus, that the requested discovery should be directed to Ankura or Lavin as party defendants, including because the requested discovery is (in its view) overbroad. Ex. 6 at 3. They are wrong.

"Rule 45's prohibition against unduly burdening a non-party" must be viewed "through a different lens when the non-party is not truly disinterested." *See, e.g., United Biologics, LLC v. Amerigroup Tenn., Inc.*, 2022 WL 2286197, at *5 (E.D. Tenn. June 23, 2022). And Madison Dearborn is unquestionably an *interested* non-party. Madison Dearborn is Ankura's primary investor and has an interest in the outcome of this litigation and in Ankura's valuation. Its Co-Heads of Financial Services occupy seats on Ankura's Board of Directors (*see* Ex. 7 at 1-2), its Managing Director and Head of Portfolio Resources transferred from Ankura in 2019 (*id.* at 3), and Madison Dearborn guides Ankura to drive growth and to ensure Ankura will generate compelling returns when Madison Dearborn ultimately decides to sell it (*see* Ex. 8).

In fact, the ties between Madison Dearborn and the defendants in this litigation are so close that Madison Dearborn has apparently reviewed documents produced to BDO—even though a confidentiality order is in place in the underlying litigation—refuting its claim that it is somehow

---

[3] For the reasons stated in BDO's accompanying Motion to Transfer, this Court should transfer this motion to the Eastern District of Virginia. A favorable ruling on the Motion to Transfer, which BDO respectfully requests be reviewed expeditiously by this Court, will moot the need for the Court to review this Motion on the merits.

"disinterested." Ex. 6 at 3-4 ("MDP nevertheless endeavored to identify personnel who might possess such valuation material . . . based upon the documents produced to BDO"). BDO did not share any production with Madison Dearborn. Ankura or Phan must have done so, establishing Madison Dearborn is not only heavily invested in the outcome of this litigation, but is also already an active participant. As an interested third party, Madison Dearborn must be treated like a party opponent—and not as a disinterested third party—when evaluating their obligations to respond to a Rule 45 subpoena. *See, e.g., Lymon v. Chamberlain*, 2020 WL 6940985, at \*5 (N.D. Ill. Nov. 24, 2020) (holding that a third party with an interest in the outcome of a case "is not truly a disinterested third party" and therefore is "not . . . entitled to greater protections as a third-party to this case"); *see also United Biologics, LLC*, 2022 WL 2286197, at \*5-6 (holding that third party who was a major investor of a party defendant and occupied two seats on its board was not a disinterested party for the purposes of Rule 45).

Nor can BDO obtain the requested information from party defendants. A similar situation arose in *Sziber v. Dominion Energy, Inc.*, 2021 WL 6332784, at \*3 (E.D. Va. Sept. 14, 2021). In *Sziber*, the plaintiff issued a subpoena for relevant documents on a nonparty even though it had requested the same documents from the party defendant. *Id.* at \*1. The nonparty "claim[ed] that [plaintiff] should obtain the requested information from [the defendant] rather than from [it]." *Id.* at \*2. The *Sziber* court disagreed, noting that "[plaintiff] attempted to do just that, and [the defendant] produced an incomplete" document. *Id.* The defendant's inability to respond to plaintiff's request established that it was not obtainable from a party to the litigation, and production from a nonparty was necessary. *Id.* The same is true in this case. Like the nonparty in *Sziber,* Madison Dearborn claims BDO must obtain the requested information from Ankura or Lavin. And just like *Sziber*, BDO tried to do that with discovery it served on Ankura and Lavin

5

who, represented by the same counsel as Madison Dearborn, refused to produce anything.

In fact, Madison Dearborn has also *already produced some* emails involving Ankura and cannot demonstrate why producing the remaining requested responsive and relevant communications and documents would create an undue burden other than simply saying it will. This boilerplate objection fails. *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *3 (N.D. Ill. Sept. 29, 2021) (denying nonparty's motion to quash because "[o]ne claiming undue burden must do more than say it is so" (citing *EEOC v. Aerotek, Inc.*, 815 F.3d 328, 334 (7th Cir. 2016))). This is particularly true here because Madison Dearborn is an interested party ineligible for Rule 45's heightened standard, and "it would only benefit [Madison Dearborn] and Defendant [Ankura] to coordinate their efforts in producing documents because there will presumably be some overlap." *Lymon*, 2020 WL 6940985, at *5. On the other hand, if complying with BDO's subpoena is unduly burdensome because Madison Dearborn possesses reams of relevant and responsive information that Ankura also possesses, that only establishes that the two are alter egos of each other and should share each other's discovery obligations.

Madison Dearborn also ignores that it possesses relevant, responsive documents Ankura and Lavin do not, such as internal communications concerning Ankura's Healthcare TAS practice, Madison Dearborn's efforts to engage and communicate with investment banks and other third-party investors that would exclude Ankura, internal valuations of BDO's Healthcare TAS practice and Ankura's healthcare industry transaction practice, and any back-up financial analyses. Production should be compelled for this reason, too. *See Architectural Iron Workers Local No. 63 Welfare Fund v. Legna Installers Inc.*, 2023 WL 2974083, at *5 (N.D. Ill. Apr. 17, 2023) ("Indeed, the fact that the subpoena requests might be the same or similar does not mean that the responsive documents in the possession, custody or control of the subpoena recipients are the same

6

as the documents in the possession, custody or control of the Defendants. Ultimately, speculation alone is inadequate to establish undue burden.").

At bottom, the requests at issue are relevant to BDO's case against *all three defendants*, not simply Ankura and Lavin. BDO's case against Phan will remain in the Eastern District of Virginia regardless of the outcome of Ankura and Lavin's pending motions to dismiss.

### B. Madison Dearborn Impermissibly Limited Its Search to Emails

BDO's requests seek the production of all responsive, non-privileged communications and documents relevant to its requests, yet Madison Dearborn unilaterally limits each of its responses to "a reasonable review of its emails" only and an inquiry to a single Madison Dearborn employee. The limitation is prejudicial and meritless. Madison Dearborn provides no explanation for this limitation, let alone any authority, which is not surprising since they are required to produce responsive emails *and* non-emails. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2024 WL 2846035, at *4-5 (N.D. Ill. June 5, 2024) (raising serious concerns with a party's failure to "produce *all* responsive documents—whether the documents are electronically stored information (ESI) or tangible/physical documents" (emphasis in original)); *see also Daedalus Blue, LLC v. MicroStrategy Inc.*, 2021 WL 11709428, at *2-3 (E.D. Va. May 3, 2021) (differentiating between a party's email and non-email production, and specifically ordering completion of non-email production within 10 days). Madison Dearborn should be compelled to search for and produce all non-privileged documents and communications in its possession that are responsive to BDO's requests—not just emails.

### C. Madison Dearborn's Objections Should Be Overruled

#### 1. Request Nos. 1-3

BDO's first three requests seek information related to Ankura and Lavin's decision to

7

poach the BDO Healthcare TAS practice by persuading its employees to leave BDO and join Ankura. Ex. 2 at 3-4. Madison Dearborn provides a litany of generalized, boilerplate objections to these requests, including that (1) they are unduly burdensome (without explaining why), (2) claiming that common terms like "contemplated," "possible," and "planned" are vague, (3) speculating that the information sought may be confidential, or (4) arguing they seek irrelevant information because the requested documents are "unconnected to the performance of duties by allegedly solicited employees at/for BDO Healthcare TAS, and the performance of those duties within/for Healthcare TAS at Ankura." Ex. 3 at 5-12. Madison Dearborn agreed to search for and produce responsive documents in its possession "subject to its objections." *Id.* Despite this promise, no responsive documents were included in Madison Dearborn's production. It is unclear if this is because no responsive documents exist or if Madison Dearborn is withholding documents based on its objections.

If no documents exist, Madison Dearborn must provide amended written responses confirming that fact. *SFG, Inc. v. Musk*, No. 19-CV-02198, 2021 WL 12094156, at *2 (N.D. Ill. Mar. 3, 2021) (compelling supplemental written answers to requests for production to indicate whether any documents are being withheld where initial response was "replete with boilerplate objections . . . but d[id] not clearly indicate whether any documents [were] being withheld pursuant to those objections"). If responsive documents are being withheld, the Court should overrule Madison Dearborn's meritless, boilerplate objections. Indeed, courts routinely overrule generalized, unduly burdensome objections like Madison Dearborn's because "case after case has held that boilerplate objections like those advanced here will not be condoned or honored. They are no better than not filing objections at all." *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) (collecting cases).

The same outcome is warranted here, particularly in light of Madison Dearborn's gamesmanship and delay. *Id.* (ordering production of responsive documents when "various documents were not produced" because "[g]eneral objections are tantamount to not making any objection at all" and only create "consequent institutional burdens and the needless imposition of costs on the opposing party"); *see Hanwah Azdel, Inc. v. C&D Zodiac, Inc.*, 2013 WL 3660562, at *6 (W.D. Va. July 11, 2013) (rejecting non-party's boilerplate objection that production would cause an undue burden and compelling production of documents "[g]iven [the non-party's] prolonged gamesmanship, delay in making a production it had promised for months, and the fact that it did not properly object or move this court to quash or modify the subpoena during this dilatory period"); *Granite State Ins. Co., et al. v. Pulliam Enters., Inc., et al.*, 2015 WL 13667005, at *4 (N.D. Ind. Oct. 13, 2015) (waiving nonparty's general objections to a Rule 45 subpoena for documents because "[g]eneral objections made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not objections' at all—and will not be considered." (internal citations omitted)).

### 2. Request Nos. 4 and 6

BDO's fourth and sixth requests seek all documents and communications concerning Madison Dearborn's valuations of (1) BDO's Healthcare TAS practice before Ankura, Lavin, and Phan stole it, and (2) the practice Ankura created by stealing BDO's practice. Ex. 2 at 4-5. Examples of relevant documents include Management Information Presentations, Confidential Information Memoranda, meeting presentations, and other documents containing Madison Dearborn's valuations of these practices, as well as documents and communications related to Lavin's publicized plan to "accelerate [Ankura's] growth." *Id.*

Madison Dearborn agreed it would search for and produce non-privileged information

9

pertaining to its valuations of BDO's Healthcare TAS practice (before Ankura stole it). Ex. 3 at 7-9.[4] But it refused to produce any documents about its valuation of the practice Ankura stole from BDO by again relying on boilerplate objections, including that certain terms are vague, that the information seeks confidential and proprietary information, and—inexplicably—that Madison Dearborn's internal valuations of Ankura's healthcare industry practice are not relevant to this lawsuit.

The requested information is relevant to BDO's damages. BDO filed this lawsuit to put an end to the defendants' unlawful conduct and to recover the damages their conduct has caused, as well as the unjust enrichment defendants received. Ex. 1, Am. Compl. ¶¶ 74-76, 162-69, 189-92. Madison Dearborn agreed it would search for and produce non-privileged documents relating to its valuation of BDO's Healthcare TAS practice before it was stolen. But so are the same types of valuations created after the theft of BDO's practice, given that Ankura's healthcare advisory practice as it exists today is relevant to BDO's potential damages claims given that the practice group, and its members and the BDO clients they stole, lies at the center of this case.

Madison Dearborn also asserts conclusory objections that certain common place terms are "vague" or that the requests seek confidential information. These should be overruled for the reasons just discussed. Nor is it clear why the Protective Order entered into this case was sufficient to protect confidential information already produced, but no longer sufficient to protect any documents withheld on this ground, as asserted. Madison Dearborn should be ordered to produce

---

[4] Despite this promise, Madison Dearborn failed to produce documents related to BDO's Healthcare TAS practice. For the reasons explained above, if no documents exist, Madison Dearborn must say so, and if documents are being withheld based on boilerplate objections, the Court should overrule the objections and compel Madison Dearborn to produce all responsive documents. *SFG, Inc.*, 2021 WL 12094156, at *2.

the requested documents.

### 3. Request No. 5

BDO's fifth request to Madison Dearborn seeks all documents and communications relating to BDO's current and prospective clients who worked with (1) BDO's Healthcare TAS practice before Ankura hatched its scheme and (2) Ankura's healthcare industry transition practice after it stole the BDO Healthcare TAS practice. Ex. 2 at 5.

Madison Dearborn agreed it would search for and produce information related to former and prospective BDO clients serviced by Ankura's healthcare industry transition practice (Ex. 3 at 8), although its production to date includes no responsive documents. It then refused to produce any documents regarding those clients' work with BDO's practice before it was stolen, once again based on generalized objections that terms like "prospective" and "potentially working" are vague (without explaining how), and that the requested information is not relevant to this case. Ex. 3 at 10.

Once again, Madison Dearborn is wrong. This case centers on Ankura's—a Madison Dearborn portfolio company—decision to steal BDO's Healthcare TAS practice. The documents sought by Request No. 5 are not only relevant to BDO's damages, but they are also relevant to BDO's allegations that Ankura stole BDO's Healthcare TAS practice because it knew the practice was highly lucrative and, therefore, worth the cost of litigation to steal. Ex. 9, Nickens Aff. ¶ 16. Madison Dearborn does not deny it possesses documents and communications relevant to these claims. It should be ordered to produce them.

### 4. Request No. 7

This request seeks documents and communications related to "(i) the indemnification of any former BDO employees related in any way to the Complaint or any proposed, potential,

11

possible, or actual work for, performances of services at, or employment by Ankura; (ii) the value or estimated value of BDO's Healthcare TAS practice; or (iii) BDO's allegation 'that the cost of defending litigation for [a BDO Healthcare TAS employee's], Phan's, and Ankura's wrongdoing was a cost of [Ankura] acquiring BDO's Healthcare TAS practice.'" Ex. 2 at 5.  Madison Dearborn limits its response to emails only, and even then, only those emails related to Ankura's promise to indemnify the former BDO employees it induced to breach their employment agreements with BDO, including by stealing BDO's trade secrets and soliciting BDO's clients in violation of their contractual obligations and fiduciary duties to BDO.  Ex. 3 at 9.[5]

Documents reflecting Ankura's promise to indemnify BDO's former employees are relevant to BDO's claims that Ankura knew its scheme to steal BDO's Healthcare TAS practice was unlawful and that it anticipated being drawn into litigation over that theft, but that it—and its CEO, Kevin Lavin—made a business decision to proceed anyway.  All other documents tied to those allegations are relevant, yet Madison Dearborn refuses to produce them.

Beyond relevancy, Madison Dearborn repeats the same boilerplate objections that common terms (including "proposed," "potential," and "value") are vague and that the requested information is irrelevant.  This is tantamount to not making any objection at all.  *BankDirect*, 2017 WL 5890923, at *2.  The Court should order Madison Dearborn to comply with the subpoena and search for and produce all responsive documents and communications.

      **5.**     **Request Nos. 9-12**

These requests seek documents related to Lavin's ownership interest in Ankura, Ankura

---

[5] Yet again, these documents were not included in Madison Dearborn's production and the Court should order Madison Dearborn to either confirm that no responsive documents exist or to produce any responsive documents in its possession, custody, or control.

12

Board of Director Meeting Minutes from January 1, 2023, documents and communications related to discussions of a sale of all or most of Ankura's assets since June 1, 2023, and documents or communications related to potential investments in Ankura during the same time period. Ex. 2 at 6. Madison Dearborn provides identical objections to each request, namely that (1) they are not relevant, and (2) the documents should be obtained from Ankura or Lavin. Ex. 3 at 10-12.[6] The parties met and conferred twice in an effort to discuss these requests, with counsel for BDO explaining that it was interested especially in any valuation, budget or projections of the Ankura Healthcare TAS practice before and after Phan arrived at Ankura, and discussed with Madison Dearborn's (and Ankura's) counsel the types of documents it believes Madison Dearborn has that would be relevant and responsive, but to no avail. Madison Dearborn has not agreed to search for, let alone produce, non-email responsive documents. *See* Ex. 3 at 10-12, Buckius Decl. ¶¶ 12-13. Thus, both objections should be overruled.

First, each request clearly seeks relevant information:

- Information relating to Lavin's ownership of and financial interest in Ankura is relevant to BDO's allegation that he was willing to risk a lawsuit by raiding BDO's Healthcare TAS practice because he personally "stands to gain significant financial benefit from his misconduct." *BDO USA, P.C. v. Ankura Consulting Group, LLC*, Case No. 3:24-cv-00179-HEH (E.D.V.A.), ECF No. 55, Am. Compl. ¶ 166. This further supports the existing evidence that Lavin was directly involved in soliciting Phan and his team with the promise of indemnification, among other things. Ex. 9, Nickens Aff. ¶ 17. Madison Dearborn will no doubt have records of stakeholders and investors in Ankura, including Lavin.

---

[6] Madison Dearborn also objects to Request No. 9 on the specious grounds that the common terms "bonus," "interest," "portion" and "share" are vague and confusing. Ex. 3 at 10.

13

- Ankura's Board of Director Meetings from January 1, 2023 to the present will contain the company's discussions of its planned "acquisition" of BDO's Healthcare TAS practice, as well as that group's performance after it was plundered by Ankura. They will also contain plans to market or sell Ankura, which will include valuations important to BDO's damages case. Madison Dearborn, with personnel sitting on Ankura's Board of Directors, will have this relevant, responsive information. It should be produced without delay.

- Likewise, information relating to planned investments in or sales of Ankura is relevant to BDO's allegation that Ankura and Lavin implemented their unlawful scheme despite knowing it was illegal because the payout dwarfed anticipated litigation costs. Ex. 1, Am. Compl. ¶ 75. One reason Ankura and Lavin were willing to take this risk is that Madison Dearborn's investment strategy may have been reaching its end, and there was an added incentive to maximize Ankura's revenues to enhance its sale value before seeking potential buyers.

Second, Madison Dearborn's assertion that this discovery must be directed to Ankura or Lavin fails because—as Madison Dearborn and its counsel well know—BDO *has* asked Ankura for related information, and Ankura has refused to produce any documents whatsoever (and Lavin has refused to participate in discovery at all). Further, and equally important, many of the requested documents would only be in Madison Dearborn's possession, not in Ankura's possession—for example, its internal discussions related to additional investments in, the value of, or a sale of Ankura. BDO is entitled to these documents from Madison Dearborn, and it should be ordered to produce them.

**CONCLUSION**

For the reasons set forth above, BDO respectfully requests that its motion to compel Madison Dearborn's compliance with the subpoena issued to it be granted.

Dated: March 24, 2025

Respectfully Submitted,

**Woods Rogers Vandeventer Black PLC**

/s/ J. Benjamin Rottenborn
J. Benjamin Rottenborn (Bar No. 6290615)
Gavin Roe (pro hac vice forthcoming)
10 South Jefferson Street, Suite 1800
Roanoke, Virginia 24011
Tele: + 1 540 983 7540
Fax: + 1 540 322 2031
ben.rottenborn@woodsrogers.com
gavin.roe@woodsrogers.com

Dean Buckius (pro hac vice forthcominng)
101 West Main Street, STE 500
Norfolk, VA 23510
Tele: +1 757 446-8620
Fax: +1 757 446 8670
dean.buckius@woodsrogers.com

*Attorneys for Plaintiff BDO USA, P.C.*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on the 24th day of March 2025, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the applicable ECF Registrants. A copy of this motion was also served on Madison Dearborn's counsel and counsel of record in the underlying litigation pending in the Eastern District of Virginia via email.

                                          /s/ J. Benjamin Rottenborn
                                          J. Benjamin Rottenborn